NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

The KOSTEL CORPORATION, d/b/a Big
Ben Shoe Store, Respondent.

No. 18111.

United States Court of Appeals,
Seventh Circuit.

Feb. 25, 1971.

Rehearing Denied April 13, 1971.

348

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet Prevost, Asst. Gen. Counsel, Warren M. Davison, Atty., N.L.R.B., Washington, D. C., for petitioner.

S. Richard Pincus, Herbert M. Berman, Lederer, Fox & Grove, Chicago, Ill., for respondent.

Before KILEY and KERNER, Circuit Judges, and REYNOLDS, District Judge.[1]

KILEY, Circuit Judge.

The Labor Board seeks enforcement of its cease and desist orders based on findings that respondent Kostel Corporation (Company) violated Sections 8(a)(1), 8(a)(3) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158; and of its order that it bargain with the Union.[2] We enforce the orders.

The Company's self-service shoe store in Kankakee, Illinois was opened in April, 1967. A few months later the Union began an organizational drive among the store's employees which then numbered between three and seven. During this drive the Company's District Manager Moshinsky committed unfair labor practices in interrogating employees about their Union activity and in

1. Judge John W. Reynolds of the United States District Court for the Eastern District of Wisconsin is sitting by designation.

2. Retail Clerks International Association, AFL–CIO, Local 1504.

threatening to discharge, and constructively discharging, employees for this activity. On August 3, 1967 the Union, after receiving Union authorization cards from a majority of the employees, demanded recognition as bargaining agent. The demand was not met and the proceeding before us followed.

The only issues presented are with respect to the findings and conclusions that respondent had violated Section 8 (a) (5) [3] by refusing to bargain with the Union on or after August 3, 1967; and with respect to the bargaining order.

## I. THE § 8(a) (5) VIOLATION

The Company does not dispute that there is substantial evidence to support the Board's conclusion that the Company violated § 8(a)(5) of the Act by refusing to bargain in good faith. Rather, it challenges that finding solely on the grounds that the Kankakee store employees did not constitute an appropriate bargaining unit and that the Union did not have a majority when it made its demand for recognition.

The Examiner found that the unit was not appropriate. The Board decided that the unit was appropriate.

The Board has a broad discretion in its determination of an appropriate unit and may choose any unit it reasonably deems appropriate. State Farm Mutual Auto Ins. Co. v. NLRB, 411 F.2d 356, 358 (7th Cir. 1969). The unit must be chosen in relation to the facts of each case, and the Board is required to make each determination in order to assure the employees "the fullest freedom in exercising the rights guaranteed by [the Act]." Section 9(b), 29 U.S.C. § 159(b). But various factors, with no one determinative, may enter into making this determination: the company organization, the number of employees in the unit and their geographic distribution, the responsibilities of unit supervisors, and the extent to which the unit is already organized. State Farm Mutual Auto Ins. Co. v. NLRB, supra, at 358. And where the facts underlying a Board determination are uncontroverted, the determination will not be overturned unless it is "arbitrary or unreasonable." May Dept. Stores Co. v. NLRB, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145 (1945); NLRB v. Krieger-Ragsdale & Co., 379 F.2d 517, 520 (7th Cir. 1967).

We think the Board sufficiently related its determination of appropriateness to the relevant facts. The 50 mile geographical separation of the Kankakee store from the three downstate Illinois stores, in the light of the stock-boy employees of the Company, could be reasonably seen as isolating the Kankakee employees from easy communication with employees in the other cities, even if there might reasonably be said to be a substantial community of interest between employees in these several cities outside of the Chicago metropolitan area. The 59 mile distance between Chicago and Kankakee might offer easier communication but would probably offer less community interest between employees in the 13 Chicago stores and the stock-boys in Kankakee, since employment conditions and wage scales might be entirely different for the two cities. The distance between Kankakee and Hammond, about equal to that between Kankakee and Chicago, might offer less easy communication while offering greater community of interest between the Kankakee stock-boys and those in Hammond.

It should also be noted that the Kankakee store manager had a reasonable degree of autonomy in her "on the spot" supervisory control of the self-service stores, especially in view of the small number [4] and unskilled character of

3. Respondent's brief states that it does not take exception to the 8(a) (1) and (3) findings and conclusions.

4. Although the minimal size of the unit may be a factor, it is not determinative.

See NLRB v. Quaker City Life Ins. Co., 319 F.2d 690 (4th Cir. 1963), where a six-employee unit was held appropriate.

the employees involved and the significant fact that the district supervisor visited the Kankakee store only once or twice a week. And the minimal interchange of employees, found by the Board, which contributes to the isolation of a group of stock-boy employees from the other groups, reinforces our conclusion that the Board did not err in deciding that the Kankakee store was an appropriate bargaining unit.

We see no merit in the claim that in making this determination the Board failed to accord any weight to the principle of *stare decisis*. The doctrine of *stare decisis* does not require that the Board's policies and standards be unchangeable since it must meet changing conditions by corresponding changes in policies and standards. There is no *per se* injustice in this. The question is in each case whether the policy, standard or decision is erroneous. NLRB v. Western Wirebound Box Co., 356 F.2d 88, 91 (9th Cir. 1966).

Respondent's reliance upon NLRB v. Purity Food Stores, Inc., 376 F.2d 497 (1st Cir. 1967), and NLRB v. Frisch's Big Boy Ill-Mar Inc., 356 F.2d 895 (7th Cir. 1966), is of no avail. The facts in those cases distinguish them.[5] And our observation in *State Farm*, 411 F.2d at 358, that the Board need not choose the best unit disposes of the Company's argument that the appropriate unit should be the employees in the Kankakee and the 13 Chicago metropolitan area stores.

We hold that the Board did not err in concluding that the Kankakee store was an appropriate bargaining unit. Since there is no credibility issue on this point, and the disagreement between the Examiner and Board is upon a conclusion as to which the Examiner's findings are not entitled to special weight,

the Board's final determination was within its prerogative. NLRB v. Stafford Trucking Co., 371 F.2d 244, 249 (7th Cir. 1966).

Since the Trial Examiner found the Kankakee employee unit inappropriate, there was no need for him to go on to the question of the alleged 8(a)(5) violation. The Board, however, in disagreeing with the Examiner, reviewed the relevant evidence on the issue and concluded that "by refusing on and after August 3, 1967" to bargain with the Union as exclusive representative of the Kankakee unit, respondent violated 8(a)(5) and (1) of the Act. The evidence: On August 1, 1967 the Union wrote the Company demanding recognition on a card majority. The Company received the letter August 3 and the next day District Manager Moshinsky asked the Union "to hold off matters" because Mr. Kostel, the Company's president, was out of town but would contact the Union upon his return "on or about" August 26. Neither Moshinsky nor Kostel communicated with the Union after Moshinsky's message.

At the time of the Union demand on August 1, 1967, the store had five employees: Carter, Guimond, Dirker, Senesac and Entwhistle. Of these employees, only two, Guimond and Dirker, had signed Union authorization cards. A third authorization card, that of Entwhistle, was signed on August 23, 1967.

The Board's original decision was filed August 14, 1968. It found that on August 3 the appropriate bargaining unit consisted of Dirker, Guimond and Entwhistle. It excluded employee Senesac from the bargaining unit because she was a temporary part-time employee, and Carter because he was a Social Security annuitant. The Board found that the Union had been validly designated as of

5. In *Purity Food Stores* there were seven supermarkets—employing about 400 employees—all located north of Boston within a 30-mile radius of the company's central office with frequent interchanges of employees. In *Frisch's Big Boy* the ten stores involved were in Indianapolis and all the Indianapolis employees had "identical terms and conditions of employment." It was agreed by the parties in that case that the eleventh store, at Muncie, 60 miles away, should be a separate unit.

August 3, 1967, as bargaining representative by two of the three employees in the unit.

The Supreme Court filed its opinion in NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547, on June 16, 1969. Thereafter, upon notice to the parties involved and after the submission of memoranda, the Board modified its decision with respect to the Union's majority on August 3, 1967. Because of a new Board policy, Carter was now included in the unit and the Board found the Union without a majority on August 3. However, it found that the Union's demand for recognition was a "continuing" one and that on August 23 [6] the Union had a majority, and respondent's failure to respond to the demand after that date viewed in the light of the prior violations of 8(a) (1) and (3), was a violation of 8(a) (5) and (1).

■ We think the record as a whole supports the Board's conclusion of a continuing demand after August 3, where the Union's demand was deferred on August 3 because of the Company's promise of a response on or about August 23, and the promise was broken. *See* Local No. 152 v. NLRB, 120 U.S. App.D.C. 25, 343 F.2d 307, 310 (1965). We hold the Board's conclusion has substantial support in the record as a whole.

We conclude therefore that the Board did not err in concluding that the Company violated 8(a) (5) and (1) of the Act by its refusal to bargain with the Company. We now turn to the issue whether a bargaining order was appropriate in this case.

## II. THE BARGAINING ORDER

The Board, in its supplemental decision, issued after *Gissel*, found that Kostel's unlawful labor practices "tended to undermine the Union's majority and that there is insufficient indication that an election would be a more reliable test of the employees' desires than a card count"; and "issuance of a bargaining order will effectuate the purposes of the Act."

The supplemental findings presumably were designed to eliminate, because of the *Gissel* decision, the "good faith" doubt language in the Board's original decision. This was proper. In this court's recent decision in NLRB v. Drives, Inc., 440 F.2d 354 (7th Cir. filed Jan. 20, 1971), Judge Stevens noted that under *Gissel* the employer's subjective motivation is no longer of controlling importance, and attention must be focused on the "causal relationship" between the unlawful practices and the election process.

■ The Board's supplemental decision, however, made no detailed analysis of the causal connection. Rather, it merely repeated the basic facts of the constructive refusal of respondent to bargain, recited generally the prior unlawful conduct, and stated its conclusion that the prior conduct made an election unreliable. This was not a sufficient compliance with *Gissel*. NLRB v. General Stencils, Inc., 438 F.2d 894 (2nd Cir. filed Jan. 19, 1971).

■ We think that *Gissel* requires the Board to make a detailed analysis of the severity of the unfair labor practices "in terms of * * * the likelihood of their recurrence in the future," the possibility of holding a fair election in the future, and the potential effectiveness of less drastic remedies in deterring future employer misconduct and removing the stain of past misconduct.[7] It is not sufficient for the Board to merely state that prior unfair practices "tended to undermine the Union's majority

---

6. The Board included employee Entwhistle who signed a card on August 23.

7. Absent this detailed analysis, the Board would appear to be applying that which it assured the Court at oral argument in the *Gissel* case it would not apply: "a per se rule that the commission of any unfair labor practice will automatically result in a § 8(a) (5) violation and the issuance of an order to bargain." 395 U.S. at 615, 89 S.Ct. at 1940.

[and] there was insufficient indication that an election * * * would be a more reliable test of the employee's desires." Such findings were aptly condemned by Judge Goldberg in NLRB v. American Cable Systems, Inc., 427 F.2d 446, 449 (5th Cir. 1970), as a "litany, reciting conclusions by rote without factual explication." Rather, the Board must "explain in each case just what it considers to have precluded a fair election and why, and in what respects the case differs from others where it has reached an opposite conclusion." NLRB v. General Stencils, Inc., *supra.* Where the Board fails to do this, a meaningful review is impossible. NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 442–443, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965):

> * * * due to the Board's lack of articulated reasons for the decisions in and distinctions among these cases, the Board's action here cannot be properly reviewed. When the Board so exercises its discretion given to it by Congress, it must "disclose the basis for its order" and "give clear indication that it has exercised the discretion with which Congress has empowered it." Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 179, [61 S.Ct. 845, 85 L.Ed. 1271].

However, rather than remand for further Board action,[8] we shall, in view of the extended time span of this proceeding and the simplicity of the facts involved, make the necessary analysis. NLRB v. Drives, Inc., *supra. Cf.* Consolo v. Federal Maritime Commission, 383 U.S. 607, 621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

We shall first discuss the 8(a) (1) and (3) violations which form the basis of the Board's conclusion that a bargaining order was required, and which are not contested by the Company.

In July of 1967, three months after the Kankakee store opened, the Union began an organizational drive in the store. In July and August, District Manager Moshinsky and Store Manager Kelly unlawfully interrogated and threatened employee Dirker concerning Union activity. A threat also was made to employee Entwhistle, but the Board ruled that this threat was not properly before it because it was not specifically alleged in the complaint. In August, employees Dirker and Guimond were constructively discharged by Moshinsky for their Union activity.

In considering whether the Board's finding that a bargaining order was appropriate, emphasis must be placed on the fact that these threats and interrogations involved three employees in a bargaining unit of five. We especially note that two of the five employees were constructively discharged during the July-August organization drive, which was only three months after the store opened. We think these factors—the size of the labor force and the nature and seriousness of the unfair labor practices—support the Board's conclusion that the bargaining order was appropriate.

The nature of the Company's business and its location should also be considered. A self-service shoe store lends itself to the employment of relatively youthful, unsophisticated or superannuated, unskilled employees—both of whom are more likely to be susceptible to extraneous influence in making their decision about Union activity than more sophisticated and skilled employees. And in a relatively small city such as Kankakee, word of the Company's unfair practices could circulate so as to create uneasiness, not only among Company actual, but also potential, employees. We think these considerations bring this case into the second category of "less extraordi-

---

8. A remand would necessarily lengthen the time span for a final disposition of the dispute before us which is already into a third year. We attribute no fault for delay to the parties. *See* NLRB v. L. B.

Foster Co., 418 F.2d 1, 4 (9th Cir. 1969). The delay is due the "unfortunate but inevitable" result of the required procedure. *Id.*

nary cases" in which a bargaining order is appropriate.[9]

The nature of respondent's business cannot be a valid reason for diminishing the right of employees to be free of unlawful practices in expressing their organizational rights under Section 7 of the Act. Unlike cases like *Drives* and *Foster*, we have not here the fact of an election that was challenged by a losing union. Consequently we are not concerned about a suitably free climate for a "rerun." We are concerned about whether the Board could reasonably have concluded in its discretion that respondent's unfair practices tended to dissipate and undermine the Union card majority, NLRB v. Lou De Young's Market Basket, Inc., 430 F.2d 912 (6th Cir. 1970), and that it was unlikely that the first employee election would produce a more reliable result for employees than the cards employees had already signed.

For the reasons given in this brief analysis to show the "causal connection" and meet the *Gissel* test, we hold that the Board's conclusion was reasonable and that it could reasonably have found, as we now find, that the possibility of erasing the effects of the past unfair labor practices by the Company by an election is slight and that the employee sentiment expressed in the cards would better be protected by the bargaining order. NLRB v. Gissel Packing Co., *supra*, 395 U.S. at 614–615, 89 S.Ct. 1918.

In reaching this conclusion, we have limited our consideration to the record before us, rather than including in our consideration employee turnover since the original entry of the bargaining order. The Fifth Circuit in NLRB v. American Cable Systems, Inc., *supra*, and the Ninth Circuit in NLRB v. L. B. Foster, Co., *supra*, have differed on the question of considering events since the Board's order. This court shares the view of the *Foster* court that the later events should not be permitted to preclude enforcement, since the delay is "the unfortunate but inevitable result of the process * * * prescribed in the Act." NLRB v. L. B. Foster Co., *supra*, 418 F.2d at 4. *See also*, G.P.D., Inc. v. NLRB, 430 F.2d 963 (6th Cir. filed Aug. 11, 1970). If any party should be penalized for the delay, it should be the employer, since his misconduct occasioned the proceeding. To hold otherwise would permit an employer to escape his duty to bargain with the employees' representative by continuing his unlawful practices or by engaging in protracted litigation. *Cf.* NLRB v. Gissel Packing Co., *supra*, 395 U.S. at 610–613, 89 S.Ct. at 1918.

We recognize the unsatisfactory result of this view since the Company may be required to bargain with a union that does not represent a majority of the employees. But the present employees, not subject of the 8(a) (5) violation, may after a reasonable period petition for a secret ballot election under 29 U.S.C. § 159(c) (1) (A). In order that the employees accurately understand their right to request such an election, we have decided that the Board's order should be modified to include provision for a notice to the employees advising them of their independent right to petition for a new election. NLRB v. Drives, Inc., *supra*. We leave the exact terms of the notice to the discretion of the Board. *Id.*

As modified, the order will be enforced.

---

9. " * * * less extraordinary cases marked by less pervasive practices which nonetheless still have the tendency to undermine majority strength and impede the election process." NLRB v. Gissel Packing Co., *supra*, at 614, 89 S.Ct. at 1940.