**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**HENRY COLDER COMPANY,
Respondent.**

No. 18678.

United States Court of Appeals,
Seventh Circuit.

Aug. 17, 1971.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Jerome Weinstein, Atty. N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Elliott Moore, Atty., N. L. R. B., for petitioner.

Russ R. Mueller, Milwaukee, Wis., for respondent.

Before CASTLE, Senior Circuit Judge and KILEY and PELL, Circuit Judges.

KILEY, Circuit Judge.

In an earlier appeal in this proceeding, NLRB v. Henry Colder Co., 416 F.2d 750 (7th Cir. 1969), this court enforced that part of the Board's order based upon findings that respondent Company had violated Sections 8(a)(1), (2) and (3) of the National Labor Relations Act.[1]

1. 29 U.S.C. § 158.

However, we declined to enforce the Board's bargaining order and remanded the case to the Board for the proper findings required by the United States Supreme Court in NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed. 2d 547 (1969). The Board has rendered a Supplemental Decision confirming the bargaining order and requests its enforcement. We grant enforcement.

## I.

■ The Company in this court challenges the validity of the bargaining order on the basis of the seven year time lapse and employee turnover since the 1964 violations, relying on NLRB v. American Cable Systems, Inc., 427 F.2d 446 (5th Cir. 1970), cert. denied 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266, and Clark's Gamble Corp. v. NLRB, 422 F.2d 845 (6th Cir. 1970), cert. denied 396 U.S. 23, 90 S.Ct. 197. This court in NLRB v. Kostel Corp., 440 F.2d 347, 353 (7th Cir. 1971), however, declined to follow American Cable [2] which requires the Board to consider events after a Board's original order. We stated there that we "share[d] the view of [NLRB v. L. B. Foster Co., 418 F.2d 1, 4 (9th Cir. 1969)] that the later events should not be permitted to preclude enforcement, since the delay is 'the unfortunate but inevitable result of the process * * * prescribed in the Act.' " [3] And in New Alaska Development Corp. v. NLRB, 441 F.2d 491 (7th Cir. 1971), we repeated our preference for the Foster view with respect to employee turnover, citing this court's earlier NLRB v. Drives, Inc., 440 F.2d 354 (7th Cir. 1971), and referring to the right of "current employees" to petition for election after a reasonable period under the bargaining order. We now again decline to follow American Cable.

## II.

The Company also contends that the Board's Supplemental Decision fails to make the "proper findings" required by NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), for issuance of a bargaining order. We remanded the bargaining order in our earlier decision for these findings.

The Supplemental Decision confirms the original findings, and the conclusions, that the Company had violated Sections 8(a) (1), (2) and (3) of the Act, and the decision recited the unlawful interrogatories, promises of benefits to undermine the Union, threats of reprisals for striking and the formation of a Company Employees Association. The decision concluded merely that the violations were so coercive and pervasive that traditional remedies could not erase their effects and that holding a fair election would be "improbable if not impossible."

■ We agree with the Company's contention that the Board's findings and conclusions are not a sufficient compliance with the requirements of Gissel. New Alaska Development Corp. v. NLRB, supra, 441 F.2d at 494; NLRB v. Kostel Corp., supra, 440 F.2d at 351. However, we are not persuaded that the deficiency requires us to again remand for the findings, although we have recognized that "[o]rdinarily, it is not for the courts to make the analysis" needed for the proper findings. New Alaska Development Corp. v. NLRB, supra, 441 F.2d at 494, n. 8. In Drives and Kostel this court made the analysis and in New Alaska remanded for the Board to do so.[4] We think the record before us makes it unnecessary for us to prolong the already unfortunate time span in this proceeding by another round of proceedings at Board level.

---

2. Our refusal to follow American Cable is effectually a refusal also to follow Clark's Gamble.

3. We do not agree with the Board's faulting the Company for the delay on the record now before us.

4. In New Alaska we set forth, at 494, n. 7, the "precise analysis" required by Gissel.

The findings of unfair labor practices upon which the Board's Supplemental Decision is premised have been approved by us in our earlier opinion and are not subject to further review. These unfair labor practices are as follows: The Company's chief officers and store managers unlawfully interrogated employees during the Union organizational drive. The president, three store managers and supervisors promised substantial benefits if the employees would "forget" the Union and negotiate directly with the Company. Employee Walters was fired for Union activity. Promotions, wage increases and other benefits were promised employees if they would reject the Union and join the Company Employees Association, the labor organization that the Company sponsored in violation of Section 8(a) (2). And a supervisor told a number of employees who took part in the strike that he would personally see that they would never get a similar job in Milwaukee again.

These are serious violations, and we think there can be no doubt that they polluted the "electoral atmosphere." The unlawful practices were applied against virtually all the employees. If it be said the climate was sufficiently congenial to the Union to permit it to obtain twenty-one cards, it is also true that the Company sought by its Employees Association agreement to cancel the cards, and that twenty-three of the twenty-nine employees did sign the agreement. We think it is probable that three practices had an especially serious coercive effect on the employees: the firing of Walters, the blacklisting threat and the promises of benefits. These are elements which would most likely remain in the memory of the employees. The practices would not have to recur in the future to have a coercive effect upon balloting in an election. We have the gravest doubt that any of the traditional remedies suggested by the Company would erase the effects of the Company's past unlawful practices to ensure a fair election. We think the card majority is "on balance" a more reliable guide to "employee sentiment." [5] We hold therefore that this case at least falls into *Gissel's* second category of "less extraordinary cases marked by less pervasive practices which nonetheless still have the tendency to undermine majority strength and impede the election processes." NLRB v. Gissel Packing Co., *supra*, 395 U.S. at 614, 89 S.Ct. at 1940.

We conclude this opinion, however, by modifying the order "to include a provision for a notice to Company employees advising them of their independent right to petition for a new election," with the exact terms of the notice left to the Board's discretion. *See* NLRB v. Drives, *supra*, 440 F.2d at 367–368; NLRB v. Kostel Corp., *supra*, 440 F.2d at 353.

The bargaining order will be enforced as modified.

---

5. Although the Board has read our original remand order as requiring reconsideration of the Section 8(a) (5) violation in light of *Gissel*, our opinion, basis of the order, did hold that the Union did have majority status when it demanded recognition and that the Union authorization cards were valid.