NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

The COPPS CORP., Respondent.

No. 71-1231.

United States Court of Appeals,
Seventh Circuit.

April 18, 1972.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Stanley J. Brown, Atty., N.L.R.B., Washington, D. C., Eugene G. Goslee, Acting Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Leonard M. Wagman, Atty., N.L.R.B., for petitioner.

Frank J. Bucaida, Madison, Wis., for respondent.

Before SWYGERT, Chief Judge, and HASTINGS, Senior Circuit Judge, and SPRECHER, Circuit Judge.

HASTINGS, Senior Circuit Judge.

This matter is before us on application of the National Labor Relations Board, pursuant to Title 29, U.S.C.A. § 160(e), (§ 10(e) of the National Labor Relations Act), for the enforcement of its order, dated February 26, 1970, and reported at 181 NLRB No. 52, against The Copps Corporation (hereinafter Copps or company).

By that order, the Board directed respondent Copps, in LaCrosse, Wisconsin, to cease and desist from violating Section 8(a) (1) of the Act, Title 29, U.S.C.A. § 158(a) (1), by interrogating employees concerning their union member-

ship, activities and sentiments; warning employees not to attend union meetings; soliciting employees to engage in surveillance of union meetings; promising benefits to the employees if the union did not come in; threatening employees with reduction of hours and more onerous working conditions; and informing the employees that it was instituting a new policy limiting hours worked by part-time employees and thereby constructively discharging several in violation of Section 8(a) (1) and (3) of the Act, Title 29, U.S.C.A. § 158(a) (1) and (3). Affirmatively, Copps was ordered to make those so discharged whole for any loss suffered as a result of the discrimination. Finally, Copps was ordered to bargain with the union [1] upon request and to post the usual notices.

The parties have presented three issues for our review: (1) whether the Board's bargaining order is entitled to enforcement in light of the standards set forth by the Supreme Court in N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); (2) whether the order is deficient for its failure to advise employees of their right to an election; and (3) whether this court should consider circumstances occurring after the order was issued in deciding whether to enforce the order.

Copps operates a chain of grocery stores located in Wisconsin. The particular store involved in this case is located at LaCrosse, Wisconsin. In early March 1969, the union began an organization campaign among the grocery department employees at the company's LaCrosse store. By March 21, 1969, the union wrote Copps declaring that it represented a majority of the employees, as evidenced by 27 signed authorization cards [2] from the 44-employee unit, offered to verify the same and requested that the company begin bargaining relations with it. The company declined to recognize the union and filed a representation petition with the Board's Regional Director. This petition was dismissed because of the outstanding unfair labor practice complaint filed in the case at bar.

The trial examiner found that Copps "interfered with, restrained and coerced employees in the exercise of their Section 7 rights" and thus it had engaged in unfair labor practices in violation of Section 8(a) (1). This finding is supported by the testimony of nine witnesses who testified to various instances of interrogation by store manager David Weaver, district manager Curtis Kunkel, assistant manager Donald Richmond and manager trainee Glenn Strittmater during March 1969. Interrogations included inquiries concerning attendance by the employees at the union meetings, how many attended and voted, who started the union, what was said and occurred at the meetings and whether the employee had signed an authorization card.

Intermixed with this questioning were numerous coercive statements by company officers. Weaver told three employees that he was going to tell them and everyone else not to attend the union meeting. Five witnesses testified Richmond stated that if the union came in he was going to limit part-time em-

---

1. Retail Clerks Local No. 640, affiliated with the Retail Clerks International Association, AFL–CIO.

2. The authorization card provided in relevant part:
"[I] hereby authorize Retail Clerks International Association, AFL–CIO, or its chartered Local Union (hereafter called 'Union') to negotiate my rates of pay, hours of work and other working conditions in collective bargaining with my employer. I also au-
thorize the Union to use this card as proof that I want it to represent me in negotiations for a labor agreement for any lawful purpose, and in particular, as the basis for it to obtain recognition by my employer as bargaining agent, without there first being an NLRB election among the employees. In addition, I favor the making of an 'All Union' (also known as union shop) agreement that will require all employees to join and remain members of the Union in order to keep their jobs."

ployees to 24 hours per week and that he would replace part-time workers with full-time employees. In addition, during this organizational campaign, Copps offered benefits to the employees if the union did not come in, including raises up to the union scale. Hence, the record fully supports the finding that Copps, by a widespread course of interrogation and coercive conduct directed at numerous employees, engaged in unfair labor practices.

After the union had gained a majority and requested that Copps bargain with it, the company constructively discharged three part-time employees in furtherance of its announced policy to limit the hours of part-time employees if the union came in.

The three employees, Larry Czechowicz, Dennis Walker and Scott Byrne, were students who worked part time for Copps during the school year and full time (approximately 30 to 40 hours per week) during the summer. This arrangement ended in the summer of 1969 when each asked for more hours and was refused.

After the refusal, Byrne and Walker obtained second jobs with a competitor of Copps in order to augment their income for the summer months. Weaver responded to this by saying it was "unkosher" for them to work at two competing grocery stores. Thus, Byrne and Walker were forced to quite work at Copps in order to seek longer hours elsewhere. Czechowicz also was forced to quit because he was unable to get more hours during the summer months with Copps. All of this occurred while Copps was experiencing difficulty in obtaining necessary help. Also, not surprisingly, Czechowicz and Walker were known by the company to be quite active in the union campaign and Byrne had signed a union authorization card. In light of all

this, the trial examiner found that Copps constructively discharged these three employees to discourage union membership in violation of Section 8(a) (3). We agree. Our review of the record leaves us with the firm conclusion that the evidence supporting the unfair labor practices finding was overwhelming.

Presented with these facts, it follows that our first concern is whether the Board's bargaining order satisfies the standards prescribed in *Gissel*. In discussing the "propriety of a bargaining order as a remedy for a § 8(a) (5) refusal to bargain where an employer has committed independent unfair labor practices," [3] the Supreme Court in *Gissel* held, at 614, 89 S.Ct. at 1940: "In fashioning a remedy in the exercise of its discretion, then, the Board can properly take into consideration the extensiveness of an employer's unfair practices in terms of their past effect on election conditions and the likelihood of their recurrence in the future." [4] The Court added: "If the Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order, then such an order should issue * * *." At 614–615, 89 S.Ct. at 1940.

Our court has held that *"Gissel* requires the Board to make a detailed analysis of the severity of the unfair labor practices 'in terms of * * * the likelihood of their recurrence in the future,' the possibility of holding a fair election in the future, and the potential effectiveness of less drastic remedies in deterring future employer misconduct and removing the stain of past misconduct." [5] N. L. R. B. v. Kostel

---

3. 395 U.S. at 610, 89 S.Ct. at 1938.

4. The result in *Gissel* was severely criticized by commentators in 56 A.B.A.J. 248, at 249–50 (1970) and 56 A.B.A.J. 877 (1970).

5. We added: "It is not sufficient for the Board to merely state that prior unfair practices 'tended to undermine the Union's majority [and] there was insufficient indication that an election * * *

Corporation, 7 Cir., 440 F.2d 347, at 351 (1971). *See also* New Alaska Development Corp. v. N. L. R. B., 7 Cir., 441 F. 2d 491 (1971).

The company contends that the Board's order,[6] which adopted the trial examiner's recommended order and findings, does not set forth a detailed analysis of the causal connection between the unfair labor practices and the preclusion of a fair election in the future. *See e. g.*, N. L. R. B. v. Drives, Incorporated, 7 Cir., 440 F.2d 354 (1971). We do not agree.

█ The Board's order took into account the seriousness and extensiveness of Copps' unfair labor practices and the tendency of this particular conduct to coerce and frighten employees into withdrawing their support from the union.[7] The Board found, and we concur, that such conduct by the officers of Copps, as hereinbefore described, "was plainly of such nature as to have a lingering effect and to make a fair and coercion-free election quite dubious if not impossible." *See Kostel, supra; New Alaska, supra;* N. L. R. B. v. Henry Colder Company, 7 Cir., 447 F.2d 629 (1971), affirming or-

der of Board on remand in N. L. R. B. v. Henry Colder Company, 7 Cir., 416 F.2d 750 (1969); and N. L. R. B. v. Quick Shop Markets, Inc., 7 Cir., 416 F.2d 601 (1969).

As we declared in Texaco, Inc. v. N. L. R. B., 7 Cir., 436 F.2d 520, at 525 (1971): "In *Gissel* * * *, the Supreme Court drew attention to the expertise of the Board in such matters and admonished reviewing courts to give special respect to the Board's choice of remedies. Moreover the Court there emphasized the broad discretion of the Board in the use of a bargaining order following unfair labor practices designed to destroy or weaken the employees' desire to be represented by a union."

█ In sum, we conclude and hold that under the facts of this case the Board's bargaining order was proper and the same is now affirmed.[8]

The company contends that since it has been two years since the order was issued and because of later events, allegedly correcting the effects of the unfair labor practices, circumstances have changed to such an extent that the bargaining order is now inappropriate.

would be a more reliable test of the employee's desires.'" *Kostel,* 440 F.2d at 351–352. *See New Alaska,* 441 F.2d at 494.

6. The Board's order is based on the following conclusion and analysis by the trial examiner:
   "But here as in General Stencils, Inc., 178 NLRB No. 18, Respondent engaged in widespread unfair labor practices during the Union's organizing drive and both before and after receiving the Union's demand for recognition. As in that case Respondent's serious and extensive unfair labor practices, despite its attempted invocation of the election machinery, tended to destroy the employees' free choice and to frighten them into withdrawing their allegiance from the Union. Such conduct was plainly of such a nature as to have a lingering effect and to make a fair and coercion-free election quite dubious if not impossible.
   "I therefore conclude and find under the foregoing circumstances that

on balance the rights of the employees and the purposes of the Act would be better effectuated by reliance on the employee sentiments expressed in the authorization cards rather than on the results of an election."

7. We cannot ignore the fact, and neither did the Board, that the employees in this unit were unskilled workers, unsophisticated in the rights of labor and in a relatively small unit. In addition, many were youthful part-time employees dependent upon this type of employment for funds to complete their education.

8. Even if we had found that the Board had not made a sufficient analysis to comply with *Gissel,* we would have enforced the order, as we did in *Henry Colder,* 447 F.2d at 630, because these were "serious violations, and we think there can be no doubt that they polluted the electoral atmosphere" and thus made the union's authorization card majority a more reliable indicator of employee preference. *See Kostel,* 440 F.2d at 352.

We follow the rule in N. L. R. B. v. L. B. Foster Company, 9 Cir., 418 F. 2d 1 (1969), cert. denied, 397 U.S. 990, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970), that "later events should not be permitted to preclude enforcement, since the delay is 'the unfortunate but inevitable result of the process * * * prescribed in the Act.'" *Kostel*, 440 F.2d at 353. *See also New Alaska* and *Henry Colder, supra.* To hold otherwise would put a premium on delay and procrastination by the company in complying with the Board's order. This we decline to do.

Since we have determined to enforce the Board's order, we must decide whether it should be modified to include a notice to the company's employees informing them of their right after a reasonable period of time to petition the Board for an election. We share the court's sentiment in *Kostel*, that a bargaining order is not a perfect solution if because of changed circumstances, the company is forced to bargain with a union that does not represent a majority of the employees. However, as the Supreme Court stated in *Gissel*, 395 U.S. at 613, 89 S.Ct. at 1939: "There is, after all, nothing permanent in a bargaining order, and if, after the effects of the employer's acts have worn off, the employees clearly desire to disavow the union, they can do so by filing a representation petition." The Court, quoting from Franks Bros. Co. v. N. L. R. B., 321 U.S. 702, at 705–706, 64 S.Ct. 817, 88 L.Ed 1020 (1944), added that once a bargaining relationship had been rightfully established it "must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed * * *." *Gissel*, at 395 U.S. at 613, 89 S.Ct. at 1939.

In order that the employees may accurately understand their right to request such an election, we have decided and it is now ordered that the Board's order should be modified to include a provision for notice to the employees of Copps advising them of their independent right to petition for an election. *Kostel*, 440

F.2d at 353. The precise wording of the notice is left to the discretion of the Board.

The order of the Board is enforced as modified.

Enforced as modified.