**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BELL MANUFACTURING DIVISION, Di GIORGIO LEISURE PRODUCTS, INC., Respondent.**

No. 72-1078.

United States Court of Appeals, Ninth Circuit.

July 31, 1973.

---

Jonathan G. Axelrod (argued), Peter G. Nash, Gen. Counsel, Marcel Mallet Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Charles M. Henderson, Director, NLRB, Seattle, Wash., Leonard M. Wagman, NLRB, Washington, D. C., for petitioner.

George J. Tichy (argued), Spokane, Wash., for respondent.

Before BARNES and WRIGHT, Circuit Judges, and SWEIGERT, District Judge.[*]

EUGENE A. WRIGHT, Circuit Judge:

The Board seeks enforcement of its order which was based on findings that the respondent company had violated Section 8(a)(1) of the Act. Respondent argues that enforcement should be denied, asserting that the trial examiner erred in his rulings on the admissibility of evidence and was guilty of misconduct in handling the three-day hearing; that a fair hearing was denied; that the findings of fact are not supported by credible testimony; and that the Board's order to bargain was error.

At oral argument, counsel for respondent argued with some vigor that the bias of the trial examiner was evident from his rulings on evidentiary questions, from his impatience and from his comments, on and off the record. Our review is limited to what is on the record.

The Board found that, after a majority of the employees (at least 28 of them) had signed union authorization cards, the company began an anti-union campaign. It threatened discharge of employees who talked about unionizing. It threatened to close the plant and to reduce the number of employees and shorten the work week. It granted a wage increase to induce employees to abandon the union. These and other findings were supported by testimony of employees and a union organizer, all of whom were found by the trial examiner to be credible.

After the activity by the company, a consent election was held and the union lost by a vote of 22 to 20, precipitating the filing of unfair labor practice charges. The Board found that there was slight chance of erasing the effects of the unfair labor practices and of insuring a fair second election. It ordered the company to bargain with the union instead of ordering another election.

We find from the whole record that substantial evidence supports the Board's finding that the company violated the Act. The scope of our review is limited, for the findings of the trial examiner, adopted by the Board, must be affirmed when there is substantial evidence to support the findings. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). It is for the trial examiner to evaluate the credibility of witnesses and to determine the weight to be given their testimony. Only he is in a position to ob-

[*] Of the Northern District of California.

serve their demeanor while testifying or while sitting in the hearing room. N.L.R.B. v. Tri-State Stores, Inc., 477 F.2d 204 (9th Cir. 1973).

The company charges the hearing examiner with bias, impatience and incompetence and we have been referred to many pages of the transcript which are said to substantiate the claim. The hearing lasted three days and the transcript of testimony takes 440 pages. It would have been longer except that a number of discussions and stipulations were taken off the record.

Two erroneous evidentiary rulings are referred to by respondent. It is urged that the trial examiner improperly refused a company exhibit which was identified by a vice president of the company.[1] We observe that the exhibit was refused before an objection was made, so we are in the dark as to the ground, except as the trial examiner stated it himself, before ruling on his own objection.

The procedure leaves something to be desired as do other comments by the trial examiner. But we cannot say that a fair hearing or due process were denied. Indeed, the effort of the trial examiner to expedite the proceeding should be commended. He endured countless repetitive and irrelevant questions, arguments by counsel with witnesses and colloquy between counsel before concluding the long hearing.[2]

Counsel for respondent also argues that the trial examiner erred in sustaining objections to a line of questioning on cross-examination of employees witnesses.[3] Counsel contends that he was prevented from demonstrating that the alleged threats of the company had no effect on several of the employees, and that as a result the Board did not have all the evidence before it in making the finding required by N.L.R.B. v. Gissel Packing Co., Inc., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969):

"In fashioning a remedy in the exercise of its discretion, then, the Board

---

1. Q. (By Mr. Tichy) I hand you what has been marked for purposes of identification as Respondent's Exhibit 7. Can you tell me what it is?

A. This is a book I had in my possession, through one of the managerial services I belong to. This I used as counsel on what I could and could not do, starting the moment I left Mr. Disbrow, on the 30th, and went back to start my campaign.

Q. Did you have this book before the 30th of March?

A. I would pretty near have to assume I've had this book since its first printing, which was sometime in 1968.

Q. And you used this book in connection with preparing your talks—I'm sorry, what did you tell me you used this book for?

A. This was my bible. This is where I lifted the material for my anti-union letters. It is where I checked with what I could or could not, or felt I could. This gave me the feeling of what I could or could not do, could or could not say. I felt this close adherence to this book would keep me out of my present position.

MR. TICHY: I now offer Respondent's Exhibit 7 into evidence.

TRIAL EXAMINER: This has as much value as him saying I called up my lawyer and asked what I could do before I made the speech. It is rejected. 152 pages which has no relevancy or materiality whatever.

2. TRIAL EXAMINER: I want to take time to thank counsel for the expeditious manner in which the case has been handled. Unfortunately, like divorce cases, people in these cases seem to get more relish out of quarreling with each other than getting together. This is your privilege.

With that, the record is closed.

3. Q. (By Mr. Tichy) Without asking you how you voted in the election, so you understand that is not where I am headed, didn't you, in fact, actually vote in the election the same way you were thinking back on March 26, 27, 28, along in there?

MR. STANGE: I object to the question. It is immaterial to the issues in the complaint.

MR. TICHY: But it is very material. Here we have a lot of allegations about all these things going on, and then we have this type of proof. The question is did it actually move anybody.

TRIAL EXAMINER: Is of no relevance whatever, and the Board has actually held in a number of cases. I am sustaining the objection.

can properly take into consideration the extensiveness of an employer's unfair practices in terms of their past effect on election conditions and the likelihood of their recurrence in the future. If the Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight, and that the employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order, then such an order should issue (see n. 32, *supra*)." *Gissel,* supra at 614–615, 89 S.Ct. at 1940.

■ Initially, we note that counsel made no offers of proof nor did he come forward with any coherent explanation to the trial examiner of the possible relevancy of the line of inquiry he was pursuing. Furthermore, we have been instructed that "It is for the Board and not the courts . . . to make [the] determination [as to whether a bargaining order is warranted], based on its expert estimate as to the effects on the election process of unfair labor practices of varying intensity." *Gissel, supra* at n. 32, p. 612, 89 S.Ct. at 1939. While we are convinced that it would have been the better course had the hearing examiner allowed respondent to explore by cross-examination the issue of impact, we cannot say on the record before us that his failure to do so was error.

"[A] reviewing court must recognize the Board's competence in the first instance to judge the impact of utterances made in the context of the employer-employee relationship." *Gissel, supra* at 620, 89 S.Ct. at 1943.

In the context of the extensive anti-union campaign engaged in by respondent here, we cannot say that the Board's failure to hear the testimony of several of the employees concerning the impact of the employer's actions on their votes was an error of such magnitude justifying a judicial setting aside of the Board's finding that a bargaining order is appropriate because of the impact of the 8(a)(1) violations. Even had every employee testified that the employer's anti-union actions did not influence his vote, we would have been hesitant to deny enforcement to a Board bargaining order on the record before us. Accordingly, on the authority of *Gissel,* we conclude that the order of the Board requiring bargaining on the basis of the cards rather than directing a new election was appropriate.[4]

The order will be enforced.

4. We caution the Board that an explicit *Gissel* finding is required, and that the absence of one, in a close case, might justify remand to the Board. *See e. g.,* New Alaska-Development Corp. v. N.L.R.B., 441 F.2d 491 (7th Cir. 1971). However, in this case we are convinced that the factors mentioned in *Gissel* were present. *See, e. g.,* Self-Reliance Ukrainian American Cooperative Ass'n v. N.L.R.B., 461 F.2d 33 (7th Cir. 1972) ; N.L.R.B. v. Copps Corp., 458 F.2d 1227 (7th Cir. 1972) ; N.L.R.B. v. Drives, Inc., 440 F.2d 354 (7th Cir. 1971) ; N.L.R.B. v. Kostel Corp., 440 F.2d 347 (7th Cir. 1971).