School Committee of Stoughton *v.* Labor Relations Commission.

SCHOOL COMMITTEE OF STOUGHTON *vs.* LABOR RELATIONS
COMMISSION & others.[1]

Norfolk.    January 14, 1976. — April 28, 1976.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*School and School Committee.    Labor.    Labor Relations Commission.*
*Words, "Reinstatement."*

Evidence merely that the chairman of a school committee stated to an
employee organization that "[r]ecognition is yours if that's what
you wish; but we do not wish to enter into professional negotiations"
did not warrant a finding that the committee had granted voluntary
recognition to the organization within the meaning of G. L. c. 149,
§§ 178D, 178F-178N, where there was no evidence that the chair-
man had authority to bind the school committee. [266-267]

A finding that an employee organization had been recognized by a
school committee was not a prerequisite to a ruling that the com-
mittee had engaged in unfair labor practices within the meaning of
G. L. c. 149, § 178L (1)-(3). [267-268]

Evidence that a school committee voted to revise the teacher aide pro-
gram by doubling the number of aides employed and halving the
working hours of each aide after learning that the aides had voted
to organize warranted a finding that the committee had engaged in
unfair labor practices under G. L. c. 149, § 178L. [268-269]

It was within the remedial authority of the Labor Relations Commis-
sion under G. L. c. 149, § 178L, to order a school committee which
had engaged in unfair labor practices against teacher aides by dou-
bling the number of aides employed and halving the working hours
of each aide to order reinstatement and back pay for aides who had
resigned as a result of the committee's action. [269-270]

Under G. L. c. 149, § 178L, the Labor Relations Commission had au-
thority to order back pay for employees whose hours of work had
been unlawfully reduced even though the employees had not re-
signed as a result of the reduction. [270-271]

There was no merit in a school committee's contention that it was
denied a fair hearing before the Labor Relations Commission be-
cause it rendered a decision without the majority of the commission
having heard the evidence where a majority had heard or read the
entire record as required by G. L. c. 30A, § 11(7). [271-272]

A school committee was not denied a fair hearing before the Labor
Relations Commission by the fact that the commission initially

---

[1] Lois Spritzer and other members of the Stoughton Teacher Aides,
Clerical Aides and Library Aides Association.

sought an injunction against the committee in order to preserve the status quo pending a resolution of the case on its merits. [272]

The combination of investigative and judicial functions within the Labor Relations Commission did not violate the right to due process of an employer which had allegedly engaged in unfair labor practices. [272-273]

BILL IN EQUITY filed in the Superior Court on July 24, 1972.

The case was heard by *Leen, J.*

*Joellen D'E. Bogdasarian* (*Steven C. Kahn* with her) for the Labor Relations Commission.

*Richard W. Murphy* (*Arthur P. Murphy* with him) for the School Committee of Stoughton.

HALE, C.J.   This is an appeal from a judgment of the Superior Court which, pursuant to G. L. c. 30A, § 14, set aside a decision and order of the Labor Relations Commission (commission).

At a January 18, 1971, meeting, a number of teacher aides employed in the Stoughton school system voted to organize under the name of the Stoughton Teacher Aides, Clerical Aides and Library Aides Association (association). Officers were elected, and a committee was appointed to negotiate a collective bargaining agreement. Shortly thereafter representatives of the association met with Stoughton school superintendent Joseph A. Gibbons, who suggested that the association present its proposals to the school committee.

At the May 18, 1971, meeting of the school committee the association asked to be recognized as the exclusive collective bargaining representative of the teacher aides and attempted to submit bargaining proposals. The school committee took the request for recognition under advisement, but it refused to consider any proposal until the question of recognition was resolved.

On July 20, 1971, the association met with the school committee. There is evidence that Dr. Recupero, chairman of the school committee, told the association that "[r]ecognition is yours if that's what you wish; but we do not

wish to enter into professional negotiations."[2] At the meeting there was no formal vote taken concerning recognition, no request for proof of majority status, and none of the members of the school committee commented on Dr. Recupero's statement. The committee then received the proposals which they had refused to consider on May 18, and went on to discuss them with the representatives of the association.

After the representatives of the association had left the meeting, the school committee voted to revise the teacher aide program by doubling the number of aides employed and halving the working hours of each aide. The aides, who had been working six hours a day, were thereby cut back to three hours a day. All aides then employed were offered positions in the revised program. However, some aides did not accept as they were interested only in full-time employment. The school committee contends that the program was revised in order to achieve greater community participation. However, there was evidence that the revision was undertaken on a mistaken belief by the school committee that the aides would be ineligible for collective bargaining if they worked less than twenty hours per week.

The association first learned of the revision of the program at a meeting the next day with Superintendent Gibbons. The evidence is in dispute as to whether he told them that "the School Committee [had] voted to withdraw recognition and to revise the whole aide program."

Based on the foregoing, the association filed a petition for certification and a complaint charging unfair labor practices with the commission on August 13, 1971. On or about September 3, 1971, the commission sought to enjoin the commencement of the revised aide program; a Superior Court judge denied the request. On September 30, 1971, the commission issued a complaint alleging that the school committee had committed unfair labor practices

---

[2] Both Dr. Recupero and a member of the association testified that they understood "professional negotiations" to mean circumstances in which both sides should hire professional labor negotiators.

prohibited by G. L. c. 149, § 178L, subsections one through five, by revising the aide program and refusing to bargain in good faith with the association. Formal hearings were held at which all parties had the opportunity to be heard, to examine and cross-examine witnesses, and to introduce evidence.

On July 10, 1972, the commission issued its decision and order, finding that the school committee had committed unfair labor practices as alleged. The commission found that the association had been recognized on May 18, 1971, and that recognition had been unilaterally withdrawn by the school committee.[3] It found that the revision of the program tended to jeopardize the association's majority status, interfered with the formation and existence of a labor organization, and was intended to discourage continued employment.

The commission then ordered that the school committee cease and desist from withdrawing recognition of the association and from refusing to bargain in good faith. The school committee was also ordered (1) to restore the working hours of teacher aides to the number of hours worked prior to September 1, 1971; (2) to offer employment to teacher aides who had resigned because of the revision of the program; and (3) to make the aides whole for any loss of pay caused by the revision of the program.

On the petition for review brought pursuant to G. L. c. 30A, § 14, the judge ruled that the commission's finding that recognition had been granted to the association was unsupported by substantial evidence and that "[a]bsent such recognition, the findings with respect to unfair labor practices cannot stand." The judge then ordered that the decision of the commission be set aside. From that order the commission and the intervenors appeal. The parties have treated this order as a judgment (G. L. c. 231, § 113, as amended by St. 1973, c. 1114, § 202), and we have accepted it as such.

---

[3] The decision seemed to treat Dr. Recupero's July 20, 1971, statement as evidence that recognition already existed.

A proceeding under G. L. c. 30A, § 14, as amended through St. 1973, c. 1114, § 3, brings before this court the evidence and the record before the commission and only permits review of the questions whether the commission's decision involves an error of law or is unsupported by substantial evidence. *Selectmen of Truro* v. *Outdoor Advertising Bd.* 346 Mass. 754, 758 (1964).

1. In the present case the judge ruled that there was no substantial evidence of recognition. Under the public employee collective bargaining law, G. L. c. 149, §§ 178D, 178F-178N,[4] employee organizations could obtain recognition through an election supervised by the commission, by petitioning the commission for certification, or through voluntary recognition by the employer. The association did not petition for certification, nor was an election held. Consequently, if recognition was obtained, it must be found to have been granted voluntarily by the school committee.

The commission found that recognition was extended to the association on May 18, 1971. However, the testimony of all witnesses (including that of the association's president) indicates that on May 18 the school committee did no more than take the request for recognition under advisement. Nor was there any evidence that the association had, by that time, presented any proof that it represented a majority of the teacher aides.

The commission now argues that recognition was accorded the association at the July 20, 1971, meeting. This argument is based primarily on the alleged statement of Dr. Recupero that "[r]ecognition is yours if that's what you wish; but we do not wish to enter into professional negotiations." We agree with the court below that this statement, although made in the presence of the other school committee members, did not amount to recognition. While recognition may be conferred orally by one with the

---

[4] These sections, though controlling in this case, were repealed by St. 1973, c. 1078, § 1. The subject matter is now covered in G. L. c. 150E, which was enacted by St. 1973, c. 1078, § 2.

authority to do so (see e.g. *NLRB* v. *Broad St. Hosp. & Medical Center,* 452 F. 2d 302, 305 [3d Cir. 1971]), there is no showing that Dr. Recupero had any authority to bind the school committee.

Dr. Recupero's statement, without some action having been taken by the committee as a body, could not confer recognition upon the association.[5] See *New England Box Co.* v. *C & R Constr. Co.* 313 Mass. 696, 701-702 (1943); *Sheahan* v. *School Comm. of Worcester,* 359 Mass. 702, 708-709 (1971); 4 McQuillin, Municipal Corporations, § 13.07, p. 482 (3d ed. 1968). All parties agree that no formal vote was taken at the July 20 meeting, and the minutes of the meeting do not mention recognition or determination of majority status. It should also be noted that formal votes had been taken on occasions when other labor organizations had been recognized by the school committee. We do not accept the commission's contention that the other members of the committee ratified Dr. Recupero's statement by their silence. We conclude that the judge was correct in ruling that the commission's finding that recognition was granted to the association was unsupported by substantial evidence.

2. The commission found that the school committee had violated subsections one through five of G. L. c. 149, § 178L.[6] However, the court below ruled that those find-

---

[5] There was no evidence presented from which it might be inferred that the school committee had delegated to Dr. Recupero the authority to speak for it on collective bargaining matters.

[6] Prior to its repeal, § 178L read in part: "Municipal employers or their representatives or agents are prohibited from: — (1) interfering with, restraining or coercing employees in the exercise of the rights guaranteed in section one hundred and seventy-eight H; (2) dominating or interfering with the formation, existence or administration of any employee organization; (3) discharging or otherwise discriminating against an employee because he has signed or filed any affidavit, petition or complaint or given any information or testimony under this section; (4) refusing to bargain collectively in good faith with an employee organization which has been recognized or designated as the exclusive representative of employees in an appropriate unit; (5) refusing to discuss grievances with the representatives of an employee organization recognized or designated as the exclusive representative in an appropriate unit ...."

ings could not stand in the absence of recognition. Of the five subsections specified by the commission, only (4) and (5) make reference to recognition. However, we need not concern ourselves with subsections (4) and (5), as recognition is not a condition precedent to the finding of a violation of at least one of the remaining subsections of § 178L relied upon by the commission.[7]

In particular, § 178L(1) prohibits interference with employees' rights to organize and elect representatives as guaranteed by § 178H.[8] The right of self-organization exists for all employees, not just for those who belong to "recognized" groups.[9] Common sense tells us that it is possible for an employer to violate § 178L(1), even though there is presently no recognized employee organization. Otherwise an employer could fire at will any employee who attempted to form or participate in an employee organization. This would render the right of self-organization meaningless. We are of the opinion that by ruling that recognition was necessary to support the commission's findings of unfair labor practices, the judge committed an error of law.[10]

---

[7] For cases considering whether an employer violates § 8(a)(5) of the National Labor Relations Act (29 USC § 158 [a][5]) by refusing to recognize a union despite authorization cards or other proof of majority status see *NLRB* v. *Gissel Packing Co.* 395 U. S. 575 (1969), and *Linden Lumber Div.* v. *NLRB,* 419 U. S. 301 (1974).

[8] Section 178H read in pertinent part: "Employees shall have, and be protected in the exercise of, the right to self-organization, to form, join or assist any employee organization, to bargain collectively through representatives of their own choosing on questions of wages, hours and other conditions of employment and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from actual interference, restraint or coercion ...."

[9] The NLRB and the Federal courts commonly find violations of the National Labor Relations Act even in the absence of recognition. Where a refusal to recognize "is due to a desire to gain time and to take action to dissipate the union's majority, the refusal is no longer justifiable and constitutes a violation of [the Act]." *Joy Silk Mills* v. *NLRB,* 185 F. 2d 732, 741 (D.C. Cir. 1950). See also *NLRB* v. *Copps Corp.* 458 F. 2d 1227, 1230 (7th Cir. 1972), enforcing 181 NLRB 294 (1970).

[10] The school committee contends that the commission may not now litigate the alleged unlawful reduction of working hours because it did

Because the judge disposed of the case on the issue of recognition, he did not review the commission's findings of unfair labor practices. However, we need not return this case to the Superior Court because we have the entire record before us and are in as good a position as the Superior Court to determine the validity of the commission's findings in this area. Based upon our examination of the entire record in this case, we conclude that the commission's findings that the revision of the aide program constituted an unfair labor practice were supported by substantial evidence.

3. The school committee next contends that the commission's order exceeded its remedial authority. General Laws c. 149, § 178L, paragraph four, provided in part that the commission "shall order the reinstatement with or without back pay of an employee discharged or discriminated against in violation of the first paragraph of this section." The committee argues that there may be no award of back pay if there has been no discharge. Since none of the aides was discharged, the committee maintains that the award of back pay was improper.

Under section 10(c) of the National Labor Relations Act, 29 U.S.C. 160(c) (which contains language very similar to G. L. c. 149, § 178L), the NLRB and the Federal courts have ordered back pay under circumstances similar to those in the instant case. See *Central Mach. & Tool Co. Inc.* 172 NLRB 1593 (1968), enforced 429 F. 2d 1127 (10th Cir. 1970), cert. den. 401 U. S. 909 (1971); *Victory Plating Works, Inc.* 140 NLRB 389 (1962), enforced 325 F. 2d 92 (9th Cir. 1963); *D'Arcy Co. Inc.* 115 NLRB 1320 (1956). In *Copps Corp. & Retail Clerks Union Local No. 640*, 181 NLRB 294 (1970), enforced as modified, 458 F. 2d 1227 (7th Cir. 1972), the hours of various clerks were reduced to twenty-four hours a week, forcing them to quit and find other jobs. The NLRB found that such reduction

---

not raise the issue below. We find this contention to be without merit because the issue, raised by the commission's complaint, was considered at the formal hearing, and was one of the subjects dealt with in the commission's decision and order.

was in reprisal for union activities and that the employees had been constructively discharged. Reinstatement and back pay were ordered. In the present case there was evidence which tended to show that some members of the association (including its president) had been forced to resign because of the reduction of hours caused by the revision of the program. The commission found that the revision "was intended to discourage continued employment and obviously made the work economically unattractive." We consider that to be the equivalent of a finding of constructive discharge, and we conclude that the evidence supports such a finding. By ordering reinstatement and back pay for those aides constructively discharged, the commission did not exceed its remedial authority.

Although G. L. c. 149, § 178L, spoke in terms of reinstatement, one need not be discharged (or constructively discharged) in order to be awarded back pay. We construe the term "reinstatement" broadly. We think that one may be "reinstated" to a former status and awarded back pay even though he has not been discharged.[11] See *Alaska Glass & Millwork, Inc.* 167 NLRB 785, 792 (1967), where the NLRB ordered back pay for an employee whose hours were unlawfully reduced (but who was not discharged and did not quit). That award was made even though section 10(c) of the National Labor Relations Act contains the word "reinstatement."

Were we to construe "reinstatement" narrowly so as to limit the back pay award, it would be unfair to those aides who remained on the job despite the unlawful reduction of hours. Additionally, G. L. c. 149, § 178L, gave the commission the power to order back pay to employees "discharged or discriminated against." To conclude that discharge is a prerequisite to an order for back pay would be to render the words "discriminated against" surplusage,

---

[11] This view is consistent with one of the definitions of "reinstate" given by Webster's New International Dictionary 1915 (3d ed. 1971): "to restore to a proper condition."

and words in a statute should not be deemed superfluous. *Milton* v. *Metropolitan Dist. Commn.* 342 Mass. 222, 225 (1961). *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 352 Mass. 617, 618 (1967). *Commonwealth* v. *Gove,* 366 Mass. 351, 355 (1974). Therefore, the commission was within its authority when it ordered that the aides be made whole.[12]

4. Finally, we turn to various procedural problems raised by the school committee. The committee contends that it was denied a fair hearing because the commission rendered a decision without a majority of the commission members having heard the evidence. Most of the hearing was conducted with only one commissioner present.[13] General Laws c. 30A, § 11(7), requires only that a majority of the commission have "heard" or "read" the evidence. Since the commission's decision stated that a majority of the commission had "heard and/or read the testimony

---

[12] It was within the commission's authority to order that the number of working hours of the aides be restored to 30 hours. Section 178L gave the commission the authority to order a party to cease and desist from a prohibited practice and to order such affirmative action as should be necessary to insure compliance with the section. A school committee has broad powers to contract with school employees (see *Allen* v. *Sterling,* 367 Mass. 844, 847 [1975]), but the municipal employees collective bargaining statute limits these managerial rights with respect to wages, hours, and conditions of employment. *School Comm. of Hanover* v. *Curry,* 3 Mass. App. Ct. 151, 156-157 (1975), *S. C.* 369 Mass. 683 (1976). While the school committee does have managerial control over the hours of the aides, here the cutting of hours was an unfair labor practice because it resulted in the dilution of the majority status of the association. Since the revision of the program constituted an unfair labor practice, the commission has the power to order the aides restored to their former status. Nor do we think that the revision of the program was a matter of educational policy that should not be the subject of collective bargaining. See *id.* at 158.

[13] See *Dedham* v. *Labor Relations Commn.,* 365 Mass. 392, 399 (1974), where the court in construing G. L. c. 149, §§ 178D, 178F-178N, stated that a hearing "may be conducted before the commission itself or by a member of the commission." See also G. L. c. 23, § 9Q, which states that "[t]he commission may, by one or more of its members or by such agents or agencies as it may designate, prosecute any inquiry necessary to its functions in any part of the Commonwealth." It should also be noted that G. L. c. 150E, § 11, of the new public employees collective bargaining law explicitly provides that a hearing may be conducted by a member or agent of the commission.

and entire record," the school committee's contention is without merit.

The school committee argues that it was not afforded a full and fair hearing on the complaint issued by the commission because the commission had initially sought an injunction blocking the revised teacher aide program from being implemented. This argument fails to appreciate the nature of the injunctive relief sought. By seeking an injunction the commission did not prejudge the case but rather sought only to preserve the status quo pending the resolution of the case on the merits. See *Danielson* v. *Local 275, Laborers Intl. Union of No. America,* 479 F. 2d 1033, 1037 (2d Cir. 1973); *Seeler* v. *Trading Port, Inc.* 517 F. 2d 33, 36-38 (2d Cir. 1975), interpreting sections 10(j) and 10(l) of the National Labor Relations Act, 29 U. S. C. § 160(j), (l). The refusal by the Superior Court to issue the injunction did not prevent the commission from proceeding on the merits of the case before it. See *National Labor Relations Bd.* v. *Denver Bldg. & Constr. Trades Council,* 341 U. S. 675, 682-683 (1951).

The school committee implicitly contends that it was denied due process of law because the commission acted as both prosecutor and judge. It is well settled that the combination of investigative and judicial functions within the same agency does not violate due process. *Pangburn* v. *CAB,* 311 F. 2d 349, 356 (1st Cir. 1962). See 2 Davis, Administrative Law, § 13.02 (1958 & 1970 Supp.). Compare *Moran* v. *School Comm. of Littleton,* 317 Mass. 591, 593 (1945), and *Mayor of Everett* v. *Superior Court,* 324 Mass. 144, 150-151 (1949), where some combination of functions has been upheld based on necessity. Although a point does exist at which the combining of prosecutorial and adjudicative functions may constitute a deprivation of due process (see e.g. *Amos Treat & Co.* v. *SEC,* 306 F. 2d 260 [D.C. Cir. 1962]), that point has not been reached in the instant case. No one who was involved in a prosecutorial capacity participated in the decision of the commission. Furthermore, the mere issuance of the complaint by the commission does not indicate a prejudg-

ment of the merits of the case. See *FTC* v. *Cinderella Career & Finishing Schools, Inc.* 404 F. 2d 1308, 1315 (D.C. Cir. 1968).

It was not error to deny the motion for a bill of particulars since the complaint supplied the school committee with sufficient information adequately to prepare its case. The school committee further contends that the commission committed prejudicial error in failing to notify the committee formally of its rights of judicial review pursuant to G. L. c. 30A, § 11 (8). In light of the school committee's timely filing of a petition for review, the irregularity did not prejudice any rights of the school committee.

The judgment of the Superior Court is reversed. The case is remanded to the Superior Court for entry of a new judgment setting aside the order of the commission in so far as it compels the school committee to cease and desist from withdrawing recognition of and refusing to bargain in good faith with the association,[14] and affirming the balance of that order.

*So ordered.*

---

[14] This does not prevent the association, after remand, from seeking recognition from the school committee or petitioning the commission for certification or for an election.