**Claude Anderson TAYLOR, Appellant**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16524.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 30, 1961.

Decided Nov. 22, 1961.

Mr. John W. Brennan, Washington, D. C. (appointed by the District Court) for appellant.

Mr. Abbott A. Leban, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Nathan J. Paulson and Frederick G. Smithson, Asst. U. S. Attys., were on the brief, for appellee. Mr. Charles T. Duncan, Principal Asst. U. S. Atty., also entered an appearance for appellee.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

A jury returned a guilty verdict against the appellant on all 52 counts of an indictment[1] charging that appellant procured payment on 52 false pay vouchers for four persons who were not entitled to compensation. Sentenced to imprisonment for concurrent terms of one to three years, he has appealed alleging as error: (1) the receipt, over objection, of authenticated photostat copies of the false vouchers rather than the originals; and (2) the introduction of records and information obtained in the

---

3. Ibid.

1. Drawn pursuant to 18 U.S.C. § 287 (1958).

course of investigation by a special agent of the F.B.I. who examined pertinent material in possession of the House of Representatives.

Appellant from January, 1955 to May, 1959 was Superintendent of the Folding Room of the House. The evidence disclosed that over 1956–1957, some 16 vouchers had been prepared for one Penner, 16 for one Day, a like number for one Fordham, with 4 vouchers for one Spotts, all ostensibly employed in or through the Folding Room. Many witnesses actually there employed over the period in question had never seen, known or heard of Penner, Day, Spotts or Fordham. No District of Columbia income tax records could be found as to any of them. Yet other evidence indicated that no such persons either were employed by the House or lived at addresses carried on the House records. Appellant's secretary received from appellant various vouchers already bearing the purported signatures of Penner, Day, Spotts or Fordham. Against each voucher a salary check, drawn on the Treasurer of the United States, was issued. Then the secretary or one other employee in the Folding Room was instructed by the appellant to cash salary checks already endorsed in the name of the payee, at the office of the Sergeant-at-Arms. The cash was turned over to the appellant.

28 U.S.C. § 1731 (1958) provides that "The admitted or proved handwriting of any person shall be admissible, for purposes of comparison, to determine the genuineness of other handwriting attributed to such person."

█ As the Government's case was developed, exhibits bearing appellant's signature were received. Included were a deed, of trust on appellant's property, a note, a signature card at a bank, and an affidavit of citizenship, all signed by the appellant. A handwriting expert examined such documents for the purpose of comparing appellant's true signature appearing on such material with yet other documents.

A witness from the Treasury Department produced thirty-nine original checks for which, after identification, photostat copies were substituted.[2] In all, some fifty-two checks had been issued purportedly to Penner, Day, Spotts or Fordham against vouchers, certified photostat copies of which pursuant to subpoena had been prepared by the General Accounting Office. The Unit Head of the Records Information Unit of G.A.O. produced photostats of the vouchers and testified that he had control, custody and possession of such records. The various photostats were received in evidence over appellant's objection that the original vouchers were the best evidence.

The Government here relies upon 28 U.S.C. § 1733 (1958) which provides:

"§ 1733. Government records and papers; copies

"(a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept.

"(b) Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof." [3]

The appellant's secretary testified for the Government that the appellant had instructed her to prepare the vouchers in the names of Penner, Day, Fordham and Spotts. When she received the

---

2. Received in evidence also were other certified photostat copies of checks in the custody and control of the General Accounting Office.

3. Fed.R.Crim.P. 27, 18 U.S.C. provides: "An official record or an entry therein or the lack of such a record or entry may be proved in the same manner as in civil actions." As to the latter, see Fed. R.Civ.P. 44, 28 U.S.C. And see Annot., 70 A.L.R.2d 1227 (1960).

vouchers from the appellant, they bore only the endorsements of the named payees. She filled in the number of hours of employment as calculated and supplied to her by the appellant. She saw him sign the vouchers thereafter. So signed, the vouchers went with the payroll to the Disbursing Clerk, whereupon checks were prepared in the names of the respective payees. The handwriting expert compared enlarged photographs of the appellant's signature on the vouchers with the known specimens of his handwriting. In his opinion, based upon his studies of the many documents, the appellant had signed the vouchers. We would burden our discussion unduly were we to recount the mass of detailed evidence which, the jury quite evidently concluded, inextricably bound the appellant to the scheme by which the Government was mulcted.

We do not doubt that the originals of the vouchers might more accurately satisfy the requirements of the "best evidence" rule. The overwhelming evidence of the pattern followed by the appellant clearly established his guilt even if the vouchers had in fact been destroyed. The jury had before it, however, not only the testimony of the many witnesses, but the direct evidence of the photostats which Congress has said "shall be admitted in evidence equally with the originals thereof." There is no suggestion that appellant sought and was denied production of the originals. He made no showing as to particulars in which the photostats failed faithfully to reproduce aspects of appellant's handwriting as it appeared in the photostats. The expert's identification of the appellant's signature was not controverted.

There was no limitation upon cross examination.[4] We have carefully examined the entire record and can find no slightest particular as to which the appellant can properly claim prejudicial error.

Appellant's next point is little short of frivolous. In the course of the Government's investigation, special agents of the Federal Bureau of Investigation examined the files and records of the House of Representatives. It is argued that in so doing the Executive Department had conducted a "clandestine" search of the files of the Legislative Branch of the Government. Appellant points to 2 U.S.C.A. § 91 (1958) as placing upon the Committee on House Administration the duty to inquire from time to time "into the enforcement or violation of any of the provisions of sections 85–88, 89 and 90 of this title." The agents were said to have inspected the records without procuring "authority from the Speaker of the House of Representatives."

For all that appears, the Committee on House Administration requested the investigation. Certainly the records were made available to the inspecting agents in the Superintendent's office. Moreover, the House of Representatives by resolution authorized release of the House records for use in this very prosecution. There is no merit in the suggestion that any personal rights of this appellant were thus violated.[5]

The appellant was fairly tried and was convicted on evidence overwhelmingly establishing his guilt. We find no error.

Affirmed.

4. Moreover, on cross examination appellant brought out that the handwriting expert had studied the originals and had caused them to be photographed in the F.B.I. laboratory. Enlargements of the photographs were in part the subject of his explanatory testimony. The Door-keeper and the Clerk of the House of Representatives also identified the appellant's signature on various documents.

5. Trimble v. Johnston, 173 F.Supp. 651 (D.D.C.1959) relied upon by the appellant is not to the contrary.