**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ACME INDUSTRIAL PRODUCTS, INC., Respondent.**

**No. 20703.**

United States Court of Appeals, Sixth Circuit.

March 4, 1971.

Frank H. Itkin, N.L.R.B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael S. Winer, Atty. N.L.R.B., Washington, D. C., on the brief.

Frederick Wm. Heath, Birmingham, Mich., for respondent; Shea, Shea, Heath & Solner, Birmingham, Mich., on the brief.

Before PHILLIPS, Chief Judge, KENT, Circuit Judge, and McALLISTER, Senior Circuit Judge.

KENT, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order issued against the respondent on December 15, 1969, and reported at 180 N.L.R.B. No. 23. The Trial Examiner and the Board found that the respondent violated Sec-

tion 8(a) (5) and Section 8(a) (1).[1] The Trial Examiner and the Board concluded that the respondent had an absolute obligation to negotiate with the Union over its decision to relocate its "Standard" operations from its Madison Heights plant to its Livingston plant. The production and maintenance employees of the respondent had been represented by Local 155, International Union United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) since 1956.

The record discloses no evidence or suggestion of any Union animus on the part of the respondent. The facts relating to the dispute are set forth in the Trial Examiner's decision and need not be set forth at length. Briefly stated, the facts are as follows:

Respondent has maintained a manufacturing plant in Madison Heights, Michigan, for a number of years. Commencing in the Spring of 1968 certain officers of the Union heard rumors that the respondent intended to move some of its operations out of the Madison Heights plant and requested information from executive personnel of the respondent as to whether or not there was any truth in such rumors. In effect the answer given was that no decision had been reached. Late in August, 1968, the Union learned that respondent was constructing a plant in Livingston County, Michigan, and on August 29, the Union president called the respondent's president and asked for negotiations in regard to such move. Respondent's president stated that he would advise on September 6 about such a meeting which he anticipated could be held on September 9 or 10. On September 6 the respondent notified the Union of the intent to move "our Standard production facilities to Livingston County, Michigan." On September 10, 1968, the Union notified respondent by letter of its desire to bargain in respect to such move. Thereafter there were eight (8) meetings between the respondent and the Union con-

cerning such relocation, during which meetings the respondent acknowledged that it was obligated to bargain with the Union about the effects of the move on the employees but insisted that it was under no obligation to bargain with the Union over its decision to move the Standard facilities. The Union at all times took the position that it had an absolute right to bargain in regard to the move and refused to make any proposals in regard to the absorption of the employees or the effect of the move upon any employees.

After the meetings described above and without any counter proposals on the part of the Union the offers of the respondent to employ all of the affected employees at the Madison Heights plant were accepted subject to this "unfair labor practice proceedings." The evidence showed that all employees were offered jobs at the same or a higher pay scale and without loss of any fringe benefits. The Trial Examiner found that there was no substantial change in overtime earnings for these employees or the other employees in the bargaining unit as a consequence of the assignment of new jobs within the bargaining unit to the displaced Standard employees. The displaced Standard employees went to the bottom of the seniority list in their new jobs pursuant to the terms of the Union contract.

The agreement between the Union and the respondent provided in part, Article I

"Section 4. The Company retains the sole right to manage its business including the right to decide the number and location of plants, the machine and tool equipment, * * *."

The Board in its decision relies upon Fibreboard Paper Products Corp. v. N. L.R.B., 379 U.S. 203, 85 S.Ct. 398, 13 L. Ed.2d 233 (1964), and Weltronic Co. v. N.L.R.B., 419 F.2d 1120 (C.A. 6, 1969).

In the testimony reproduced in the appendix on file Edward Sir, Chief Shop

---

1. 29 U.S.C. § 158(a) (5) and (1).

Steward at the Madison Heights plant, testified in part as follows:

"* * * A. * * * We were asking the company to leave the jobs here for our people, which would have been normal in any of these operations. *We told them they had property right next door they could build if they wanted to, and why they would make a move like this, we couldn't understand.*" (Appendix Pg. 48) [Emphasis supplied.]

Stephen A. Ryan, a Representative of the U.A.W., who participated in the negotiations, testified in part as follows:

"Q. So that the union on the one hand took the position only don't move? A. That is correct, and substantiated it without arguments." (Appendix Pg. 74)

Ryan further testified:

"Q. Now at that time I believe I made a statement to you indicating that the company felt obligated to deal with all problems relating to the men in this announced relocation. Is that a fair statement? A. That is correct." (Appendix Pg. 71)

It appears to be undisputed at this time that the respondent's decision to move the Standard production facilities to Livingston County was an economic decision. It is undisputed that the respondent at all times stood ready to negotiate with the Union with regard to anything and everything relating to the effect of the move upon the workmen involved.

The only issue before this Court is whether the law imposes upon an employer an *absolute* duty to bargain with the Union over its decision to relocate a part of its manufacturing operations to another plant where the employer's decision is for no reason other than economy and efficiency, and where the employer stands ready to negotiate with the Union in respect to any and all other aspects of its move.

In the opinion of this Court the broad implications of *Fibreboard* which the Board attempts to impose in this case are illfounded. As stated by Mr. Chief Justice Warren in the opinion of the Court, 379 U.S. 203, 209, 85 S.Ct. 398, 402:

"We agree with the Court of Appeals that, *on the facts of this case*, the 'contracting out' of the work previously performed by members of an existing bargaining unit is a subject about which the National Labor Relations Act requires employers and the representatives of their employees to bargain collectively." [Emphasis supplied]

And as stated by Mr. Justice Stewart in a concurring opinion, 379 U.S. 203, 218, 85 S.Ct. 398, 407:

"The Court holds no more than that this employer's decision to subcontract this work, involving 'the replacement of employees in the existing bargaining unit with those of an independent contractor to do the same work under similar conditions of employment,' is subject to the duty to bargain collectively. Within the narrow limitations implicit in the specific facts of this case, I agree with the Court's decision."

And in Weltronic v. N.L.R.B., 419 F.2d 1120, 1123, this Court stated:

"We agree with the Board that the company had the statutory duty to give the union the opportunity to bargain about the removal of the plant central work *under the circumstances here shown.*" [Emphasis supplied]

We are satisfied that the Board's interpretation, which requires negotiation of every proposed transfer of unit work from one plant to another, takes too broad a view of the holding of the United States Supreme Court in *Fibreboard* and of the holding of this Court in *Weltronic.* In *Fibreboard* the employer substituted nonunion employees of an independent contractor to do the same work on the same premises under the same circumstances as the work was done by employees of the bargaining unit. In *Weltronic* the employer moved a substantial portion of work without notice to the Union

 

to a plant where the employees were not represented by the Union while 14 of the employer's employees in the transferred unit were on layoff. In the instant case the employer stood ready and willing to bargain with the Union at any and all times with respect to all aspects of the decision except the decision itself.

On the facts here presented the respondent had no obligation to negotiate with regard to its decision to move the Standard production unit to another plant.

Enforcement denied.

William P. Gray, District Judge, filed opinion concurring in part and dissenting in part.