NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TOWNHOUSE T.V. & APPLIANCES,
INC., Respondent.

No. 75–1284.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1975.

Decided March 5, 1976.

William J. Kiley, William R. Sullivan, Jr., Chicago, Ill., for respondent.

Before CUMMINGS and BAUER, Circuit Judges, and McLAREN, District Judge.*

PER CURIAM.

In this enforcement proceeding the National Labor Relations Board ("the Board"), seeks a decree charging the respondent employer, Townhouse T.V. & Appliances, Inc. ("Townhouse"), with unfair labor practices arising out of the subcontracting of its delivery and installation operation after the employees performing that operation informed Townhouse of their desire to join a union. The issues involved are whether substantial evidence supports the Board's finding that Townhouse committed unfair labor practices and whether the Board's remedy is proper.

I.

Townhouse sells and services appliances and television sets from a single store in Chicago, Illinois. From 1959, when the store opened, until September 11, 1973, Townhouse delivered and installed its appliances with its own vehicles operated by its own employees. At the time of the alleged unfair labor practices, Townhouse operated two delivery trucks and employed four full-time driver-installers and one part-time driver-installer and utility man. From the time it commenced business in 1959 through August of 1973 no union represented any of Townhouse's employees.

On August 30, 1973, the four full-time driver-installers signed cards authorizing the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) ("the Union") to be their exclusive representative for collective bargaining with Townhouse. On September 5, 1973, two field representatives of the Union presented the cards to Michael Moore, president of Townhouse, and requested that the company recognize the Union as collective bargaining representative for the driver-instal-

Elliott Moore, Deputy Assoc. Gen. Counsel, Paul J. Spielberg, Jane P. Schlaifer, Attys., N.L.R.B., Washington, D. C., for petitioner.

* The Hon. Richard W. McLaren, United States District Court for the Northern District of Illinois, sat by designation and participated in the oral argument and discussion. However, Judge McLaren died prior to the release of the opinion.

lers and that it sign a collective bargaining agreement. Moore refused both requests and told the Union representatives that he was going to have an outside hauler deliver his merchandise. The Union filed a petition for a Board conducted certification election later that day.

After work that same day, Moore called driver-installers Oliva and Ostrick into his office. He questioned them about their desire to unionize and stated he could not afford to pay the Union's pay scale.

On September 6, 1973, Moore arranged for Rizzo Brothers Haulers to take over the Townhouse delivery operations beginning September 12. The day before Rizzo took over, Moore discharged its four driver-installers. On September 20, Townhouse sold the two trucks formerly used in its delivery and installation service.

The Administrative Law Judge found that Townhouse had violated Section 8(a)(1) of the Act through Moore's interrogation of Oliva and Ostrick and Sections 8(a)(3) and 8(a)(1) through the discharge of the four driver-installers. To remedy these violations he recommended that the Board order Townhouse to bargain with the Union concerning the decision to contract out its delivery-installation work and concerning the economic effects of the decision on the affected employees and to award the affected employees backpay from the date of their discharge to the date the Union and the company bargain either to an agreement or an impasse.

The Board adopted the Administrative Law Judge's findings with respect to Townhouse's unfair labor practices, adding the part-time driver-installer to those employees found to have been discriminatorily discharged, but refused to order the Administrative Law Judge's proposed remedy. In its stead the Board ordered Townhouse to reestablish its delivery operation and reinstate the discharged employees as well as to bargain with the Union and award the employees backpay.

Townhouse challenges both the unfair labor practice findings and the remedial order.

## II.

### Coercive Interrogation

■ Section 8(a)(1) of the Act proscribes employer conduct which coerces employees in the exercise of their right to form, join or assist labor organizations. As Townhouse points out, the mere interrogation of employees concerning union membership is not per se a violation of the Act. See *L. C. Cassidy & Sons, Inc. v. NLRB*, 415 F.2d 1358, 1361 (7th Cir. 1969). But the Board may properly find a Section 8(a)(1) violation if, within the context of the interrogation, the questions asked appear to have had a coercive effect on the employees. *NLRB v. Sutherland Lumber Co.*, 452 F.2d 67 (7th Cir. 1971); *L. C. Cassidy & Sons, Inc. v. NLRB, supra.*

■ In this case we think the Board properly found the interrogation of Oliva and Ostrick to be coercive. Moore, the president of the company, summoned the employees to his office to tell them he was "shocked" that they had not come to him before joining the Union and to ask them whether they had signed the Union authorization cards voluntarily. In light of

> "the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear", *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547, 580 (1969),

this inquiry into the employees' desire to unionize, conducted by the president of the company in his office, violates Section 8(a)(1) of the Act.

### Discriminatory Discharges

■ It is well settled that an employer violates Sections 8(a)(3) and (1) of the Act by subcontracting part of an integrated business and dismissing the persons employed therein if the action is motivated at least in part by antiunion considerations. *NLRB v. National Food Stores, Inc.*, 332 F.2d 249 (7th Cir. 1964); *NLRB v. George Roberts & Sons, Inc., d/b/a The Roberts*

*Press*, 451 F.2d 941, 845–946 (2d Cir. 1971). Of course, as Townhouse argues, the converse is true, i. e., an employer does not violate Sections 8(a)(3) and (1) if he makes a decision to subcontract solely for sound business reasons. *Jay Foods Inc. v. NLRB*, 292 F.2d 317 (7th Cir. 1961); *NLRB v. Rapid Bindery, Inc.*, 293 F.2d 170 (2d Cir. 1961).

In the case at bar the Board was presented with evidence suggesting both business and antiunion motivations for the discharges. Townhouse argued that the decision to subcontract the delivery and installation services was induced by the company's precarious financial condition and was made prior to the Union's request for recognition. The company attempted to show that its financial status was unsound through evidence indicating that its gross profit margin had been below the standard recommended by the National Appliance and Radio-TV Dealer's Association, Townhouse's trade association, and that it had incurred operating losses during 1971 and 1972, the years immediately prior to the discharges. It tried to prove that a decision had been made to subcontract prior to the Union's request for recognition by showing that on August 20 the company president Moore asked David Magee, an officer of the firm which eventually took over Townhouse's delivery and installation activities, when he could provide a truck and crew to do the work. In addition, Townhouse presented evidence of a conversation in August between Moore and a truck dealer regarding the sale of Townhouse's two trucks.

The General Counsel for the Board pointed out that at least one-third of the dealers counseled by the trade association had not maintained the recommended gross profit margin and that Townhouse had not presented the Board a financial statement for 1973, the year the discharges occurred. He further argued that the decision to subcontract was not made until September 6, the day after the Union's request for recognition. In his view, the conversation between Moore and Magee on August 20 was merely another in a series of attempts on Magee's part to take over Townhouse's delivery business. The uncontradicted evidence that no precise date was set for the commencement of the subcontracting at that time adds support to this view of the events. The General Counsel also argued that there was no testimony by anyone inside the company corroborating Moore's statement that the decision had been made prior to September 6. This and Moore's attempt on September 5 to dissuade Oliva and Ostrick from joining the Union also contradict the notion of a prior subcontracting decision.

Adding weight to the Board's position is the Administrative Law Judge's discrediting of much of the testimony presented in Townhouse's behalf. We must defer to this resolution since it is the function of the Administrative Law Judge and the Board to make credibility determinations, not this Court. *NLRB v. J. W. Mortell Co.*, 440 F.2d 455, 457 (7th Cir. 1971); *NLRB v. American Casting Service, Inc.*, 365 F.2d 168, 174 (7th Cir. 1966); *NLRB v. National Food Stores, Inc.*, 332 F.2d 249, 251 (7th Cir. 1964).

Since ascertaining the motivation for the discharges is a factual determination and our review is limited to that of deciding whether substantial evidence on the record considered as a whole supports the Board's finding, *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), we must affirm the Board since there is substantial evidence on the record to support the Board's view that the subcontracting decision was at least in part motivated by antiunion animus. We may not displace the Board's choice between two fairly conflicting views of the evidence. *Ibid.*, at 488, 71 S.Ct. at 464, 95 L.Ed. at 467.

*Remedy*

The final question for our consideration is whether the Board's order requiring Townhouse to bargain with the Union, to reestablish the delivery and installation operation, and to reinstate the discharged employees with backpay, was a proper exercise of its broad remedial powers.

Section 10(c) of the Act provides that the Board, upon finding that an unfair labor practice has been committed,

> "shall issue . . . an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act . . . ."

In *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233, 241 (1964), the Supreme Court discussed the scope of this provision:

> "[S]ection [10(c)] 'charges the Board with the task of devising remedies to effectuate the policies of the Act.' *National Labor Relations Board v. Seven-Up Bottling Co.*, 344 U.S. 344, 346 [73 S.Ct. 287, 289, 97 L.Ed. 377]. The Board's power is a broad discretionary one, subject to limited judicial review. *Ibid.* '[T]he relation of remedy to policy is peculiarly a matter for administrative competence * * *.' *Phelps Dodge Corp. v. National Labor Relations Board*, 313 U.S. 177, 194 [61 S.Ct. 845, 852, 85 L.Ed. 1271]. . . . The Board's order will not be disturbed 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' *Virginia Elec. & Power Co. v. National Labor Relations Board*, 319 U.S. 533, 540 [63 S.Ct. 1214, 1218, 87 L.Ed. 1568]."

■ In line with the Act's essentially remedial rather than penal purpose, Board orders may not be punitive or confiscatory and must be reasonably adapted to the situation that calls for redress. *NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 349, 73 S.Ct. 287, 290, 97 L.Ed. 377, 383 (1953); *Local 60, United Brotherhood of Carpenters v. NLRB*, 365 U.S. 651, 655, 81 S.Ct. 875, 877, 6 L.Ed.2d 1, 4 (1961); *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 10–11, 61 S.Ct. 77, 78–79, 85 L.Ed. 6, 9–10 (1940).

### a. Bargaining Order

In *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Supreme Court sustained the Board's remedial authority to issue a bargaining order in cases in which unfair labor practices have been committed "that interfere with the election processes and tend to preclude the holding of a fair election". 395 U.S. at 594, 89 S.Ct. at 1930, 23 L.Ed.2d at 567. The Court emphasized, "It is for the Board and not the courts" to make the determination whether the effects of the employer's unfair practices can be erased without issuance of a bargaining order "based on its expert estimate as to the effects on the election process of unfair labor practices of varying intensity." *Id.* at 612, n. 32, 89 S.Ct. at 1939, 23 L.Ed.2d at 577.

■ Here the company discharged every driver because of his union activity and destroyed the bargaining unit by contracting out its work. No conduct more drastic, or more likely to have lingering, ineradicable effects can be imagined. Accordingly, the Board did not abuse its discretion in concluding that the Union's authorization cards provide a more reliable measure of the employees' desires than would an election, and that a bargaining order would best effectuate the policies of the Act. See *Self-Reliance Ukranian-American Cooperative Association, Inc. v. NLRB*, 461 F.2d 33, 40 (7th Cir. 1972); *NLRB v. Copps Corp.*, 458 F.2d 1227, 1229–1230 (7th Cir. 1972); *NLRB v. Henry Colder Co.*, 447 F.2d 629, 630–631 (7th Cir. 1971).

A slightly more difficult issue concerns the scope of the bargaining order, i. e., whether Townhouse should be required to bargain over the decision to subcontract its delivery and installation operations. Citing cases from various Circuits, the company correctly points out that *Fibreboard Paper Products Co. v. NLRB, supra*, does not require employers to bargain over all decisions to subcontract work, but in certain cases leaves the decision solely to the employer, only requiring it to bargain over the effects of its decision on the employees. *NLRB v. Acme Industrial Products, Inc.*, 439 F.2d 40 (6th Cir. 1971); *NLRB v. Royal Plating & Polishing Co., Inc.*, 350 F.2d 191

(3d Cir. 1965); *NLRB v. Adams Dairy, Inc.*, 350 F.2d 108 (8th Cir. 1965). Townhouse argues that this is a case in which the employer is only required to bargain over the effects of the decision since the affected employees were not merely replaced by outside employees as occurred in *Fibreboard*, but an entire department of the company was liquidated.

This issue of whether an employer should be required to bargain over a decision to subcontract work is one aspect of the basic conflict between an employer's right to be free to make management decisions and his employees' right to bargain over their working conditions. In *Fibreboard*, the Supreme Court found the right to bargain to be paramount since the subcontracting decision there did not involve a fundamental alteration of the operations of the business and since the chances were good that the same cost savings effected through subcontracting could be effected through negotiation, without the discharge of the existing employees.

We think the right to bargain must also be paramount in the case at hand. Not only are the two factors relied upon in *Fibreboard* present here: the absence of a fundamental alteration in the operation of the business and the possibility of effecting equivalent cost savings through negotiations, but the subcontracting decision has been found to have been at least in part motivated by antiunion animus. Neither in *Fibreboard* nor in any of the cases cited by Townhouse which distinguished *Fibreboard* was there evidence of such animus. This factor weakens Townhouse's claim that it should be free to make the subcontracting decision as an exercise of its managerial prerogative since it indicates that Townhouse was not acting for purely business motives.

### b. Reestablishment of Operations

We consider the order to reestablish the delivery operations too financially burdensome to Townhouse to be proper under the Act. In *NLRB v. Major*, 296 F.2d 446 (7th Cir. 1961), this Court refused to enforce a similar order in a like case. In *Major*, a trucking firm which operated with its own trucks driven by its employees and trucks leased from independent operators who furnished drivers sold all its trucks and discharged all its drivers after the drivers voted for union representation in a Board election. The Board found that the firm had violated Sections 8(a)(3) and (1) of the Act since the discharges were discriminatorily motivated and ordered the firm to resume trucking operations with its own trucks and drivers. This Court agreed that the firm had violated the Act, but declined to enforce the order to resume operations on the ground that an order requiring such a large capital outlay in light of the firm's avowed business reason for eliminating its own trucking operations is punitive rather than remedial and thus contrary to the purposes of the Act.

While our review of Board remedies must be undertaken in light of the facts of the particular situation at hand, the substantial similarity of the facts in this case to those in the *Major* case suggest to us that we should follow that decision and not enforce the Board's order for Townhouse to resume its delivery operations. As in *Major*, the employer here subcontracted for business reasons as well as for antiunion considerations. The capital outlay to reacquire trucks, estimated at more than $16,000 by counsel at oral argument, plus costs such as insurance, maintenance, fuel, and taxes, will entail considerable burdens to this relatively small company, and their imposition must be characterized as punitive rather than remedial. Furthermore, since we are enforcing the back pay order against Townhouse and requiring it to bargain about the decision to subcontract the delivery operations, requiring the resumption of operations may be an investment for no purpose. As the Fifth Circuit said in a similar case in which a manufacturer was found to have violated Section 8(a)(3) by subcontracting his trucking operations to a public carrier:

> "The Employer has, we hold, violated the Act in several particulars. But it is not an outlaw. When it bargains, it must do

so in good faith. But on this major issue, it may bargain to the bitter end of a real impasse. Thus, with a new fleet of unwanted trucks on its hands, it might, and quite legitimately could, renew its determination to use public carriers. As with Christmas bonuses, it might turn out to be all bargaining—no bargain, no bonus; no trucks, no truck drivers. * * * [T]he Union has persons to bargain for. It does not need trucks to bargain for the men. And in the absence of record facts justifying it, we do not see why the Union should be given the economic pressure of this tentative, perhaps momentary, but nonetheless mandatory investment as an aid to the bargaining." *NLRB v. American Mfg. Co. of Texas*, 351 F.2d 74, 80–81 (5th Cir. 1965).

c. Reinstatement and Back Pay

Finally, we must consider the reinstatement portion of the order. We think it more proper in this case for the Board, rather than ordering the reinstatement of the affected employees, to follow the Administrative Law Judge's recommendation that Townhouse pay the discharged employees the wages they would have received had they continued working, from the date of their discharge until the date a bargain or an impasse is reached. This remedy better suits the situation at hand since reinstatement without the resumption of operations would be impossible here, inasmuch as, according to counsel for Townhouse, the discharged employees do not have the skills to work in other parts of the company.

In summary, we enforce the Board's order except for those portions requiring Townhouse to resume operations and reinstate the discharged employees. We remand this case to the Board for the framing of a new remedial order. To aid the Board in its consideration and to forestall further protracted proceedings in this case, we suggest to the Board that we would enforce an order along the lines of that recommended by the Administrative Law Judge.

ENFORCEMENT DENIED AND CASE REMANDED.