NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

SPECIAL MINE SERVICES, INC., Respondent.

No. 92–4000.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1993.

Decided Dec. 6, 1993.

Aileen A. Armstrong, David Seid (argued), N.L.R.B., Appellate Court, Enforcement Litigation, Washington, DC, Joseph H. Solien, N.L.R.B., St. Louis, MO, Paul J. Spielberg, N.L.R.B., Litigation Branch, Washington, DC, for petitioner.

William W. Cody (argued), Thomas E. Berry, Jr., McMahon, Berger, Hanna, Linihan, Cody & McCarthy, St. Louis, MO, for respondent.

Before CUDAHY and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Immediately after an organizational campaign that ended in a tied representation election, a manufacturer of coal mining supplies laid off several of the union's principal supporters and subcontracted the construction of electrical connectors. An administrative law judge determined that this reflected anti-union animus. The NLRB agreed and ordered the firm to reinstate the workers with back pay. It has done so and recognized the union to boot. What is principally at stake therefore is the Board's direction to undo the subcontract: to return the oven (used to bake the connectors) to the employer's main plant and resume the manufacture of these parts. The Board's decision that the employer acted for forbidden reasons is supported by substantial evidence; we need not discuss the details. The order to reinstate the connector operations is more problematic.

"It is the Board's usual practice in cases involving discriminatory relocation of operations to require the employer to restore the operations in question ... unless the [employer] can demonstrate that restoration of the status quo is inappropriate." *Lear Siegler, Inc.*, 295 N.L.R.B. 857, 860, 1989 WL 224179 (1989). No court has expressly endorsed this position, but many have enforced such orders without suggesting that anything was amiss. E.g., *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964); *NLRB v. Carbonex Coal Co.*, 679 F.2d 200 (10th Cir.1982); *NLRB v. North Carolina Coastal Motor Lines, Inc.*, 542 F.2d 637 (4th Cir.1976). Special Mine Services does not contest the rule but seeks shelter in the "unless" clause—a portion of the doctrine to which courts have devoted more attention, and which they have insisted the Board respect. E.g., *NLRB v. Townhouse T.V. & Appliances, Inc.*, 531 F.2d 826 (7th Cir.1976) (declining to enforce an order to resume the original business because taking back the subcontracted work would be burdensome); *Jays Foods, Inc. v. NLRB*, 573 F.2d 438 (7th Cir.1978) (same). Special

Mine Services documented the financial burden by establishing that its subcontractor supplied the connectors for less than the cost Special Mine Services had incurred to make them, and it contended that other costs of running the oven at its main plant (particularly the need to install heavy-duty electrical circuits, without which the oven had operated poorly) not only supported the original decision to subcontract the work but also established that taking the work in house would be unusually expensive.

The administrative law judge did not recommend the restoration of the work, but neither did he give reasons for not doing so. He stepped lightly over the employer's argument about its electrical problem: he concluded that it is soluble, but at what cost in time and money he did not say. He discussed other cost savings, a subject to which we return. In response to the General Counsel's exception on this subject, Special Mine Services reiterated its contentions that resuming the connector operations would impose heavy capital and operating costs. If the union adherents are rehired with back pay, Special Mine Services contended, they will have a full remedy. To this the Board replied (and this footnote is its whole treatment of the subject):

> The General Counsel excepts to the judge's failure to order the Respondent to reestablish and resume the connector work that it subcontracted for unlawful reasons. We find merit to this exception and shall require restoration of the status quo ante in this respect. The Respondent may introduce at compliance any evidence not available prior to the hearing bearing on the appropriateness of this portion of the remedy. See *Lear Siegler, Inc.*, 295 NLRB 857, 860–62 [1989 WL 224179] (1989).

Each party had arguments; why did the Board choose one side rather than the other? Our case illustrates a depressing pattern. There is one serious issue, which the Board tucks into a footnote (the text of most of the Board's opinions is boilerplate; the whole of the decision is relegated to footnotes). The footnote states a result but omits reasons. The Board piles up the evidence on the easy

portions of the case and ducks the hard ones. Come the petition for enforcement, the Board's lawyer spins out an elaborate justification, but too late—for only the Board's own reasons, and not the rationalizations of counsel, matter. *SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). Fiat does not support a decision. Tough nuts must be cracked open before the court swallows.

Did the Board disbelieve the employer's claim that installing new electrical lines (and making other adjustments) will be costly? Did it accept the evidence but think these costs appropriate in light of the magnitude of the injury inflicted on the employees? Did the Board perhaps believe that the costs will not be incurred at all, because the union will agree to continuation of the subcontracting in exchange for higher wages (so that the order will not produce a waste of resources, but will only transfer wealth from employer to future workers)? Did the Board rely on the ALJ's pooh-poohing of the employer's cost savings claim? If so it would be on thin ice, for the ALJ made an elementary blunder. Special Mine Services subcontracted only the fabrication of the connectors. It furnished its vendor with the materials and handed over the oven used to fuse them; the vendor charged Special Mine Services a price based on Special Mine's labor costs, guaranteeing a 5% savings. The ALJ responded that to find the net savings one must subtract the cost of the oven. Not at all. This is a sunk cost, which Special Mine Services has incurred whether it uses the oven itself, gives the oven to a subcontractor, or throws the oven into Lake Michigan. Only variable costs matter for ongoing operations. The variable costs of materials are unaffected (Special Mine Services buys these no matter who fabricates the connectors), so a reduction in the labor component of costs is a real savings.

Or did the Board perhaps not consider the subject at all, postponing the "real" decision to a compliance hearing? The final sentence of the footnote suggests as much, although it implies that only new evidence—and not the sort of arguments made in the briefs on the basis of the record the ALJ assembled— would count. If the Board meant to put off decision, it is not clear why it has asked us to enforce this portion of its order. For *our* order would not just send the parties to a new hearing for the introduction of fresh evidence. Our order would direct Special Mine Services to restore the connector fabrication to its own plant, and the expense of doing so would be no defense. When the Board defers decision, it ought to defer the application for enforcement as well. (There is no time limit on petitions for enforcement. *NLRB v. P\*I\*E Nationwide, Inc.,* 894 F.2d 887 (7th Cir.1990).)

Forced to decide on this record, and with the meager assistance of the Board, whether Special Mine Services must be put in jeopardy of the contempt process if it does not resume connector fabrication at its main plant, we must decline to enforce the order. The Board may supply the missing explanation for its decision and file a new petition for enforcement, or it may conduct the compliance proceedings and issue a fresh decision on the enlarged record. What we will not do is put judicial compulsion behind an order entered for undisclosed reasons on a record the Board itself apparently believes inadequate for decision. Accordingly we decline to enforce paragraph 2(a) of the Board's order (and the part of the employer's notice corresponding to this paragraph) but enforce the remainder.